# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**IRENE ADZIMA,**

    **Plaintiff,**

**-vs-**                   **Case No. 6:09-cv-1734-Orl-DAB**

**COMMISSIONER OF SOCIAL SECURITY,**

    **Defendant.**

_____

## MEMORANDUM OPINION AND ORDER

This cause came on for consideration without oral argument on review of the Commissioner's administrative decision to deny Plaintiff's application for social security disability benefits. For the reasons set forth herein, the decision of the Commissioner is **AFFIRMED.**

### *PROCEDURAL HISTORY*

Plaintiff filed an application for Supplemental Security Income (SSI) and a Title II application for disabled widow's benefits (R. 10, 102-04), claiming that she became disabled as of April 9, 2005 (R. 102, 123, 127). The Commissioner denied Plaintiff's claims in initial and reconsideration determinations (R. 63-70, 72-76), and Plaintiff requested and received a hearing before an administrative law judge ("the ALJ"). In a decision dated May 19, 2009, the ALJ found Plaintiff not disabled (R. 10-20). On August 25, 2009, the Appeals Council denied Plaintiff's request for review (R. 1-4), making the ALJ's decision the final decision of the Commissioner.

Plaintiff brings the instant action for review and has consented to the jurisdiction of the United States Magistrate Judge. The matter has been fully briefed and is now ripe for resolution.

### *NATURE OF CLAIMED DISABILITY*

Plaintiff claims she is disabled due to bipolar disorder, anxiety, depression, herniated discs and/or degenerative disease, post-traumatic stress disorder (PTSD) with psychotic features,

hypertension, branch retinal artery occlusion of the left eye and fibromyalgia (R. 127, 165, 53-55).

*Summary of Evidence Before the ALJ*

Plaintiff was 50 years old on her alleged date of onset, with a tenth grade education and no claimed work experience (R. 18, 127-28, 132).[1]

The medical record for the applicable time period is set forth in detail in the decision and, in the interests of privacy and brevity, will not be repeated here except as necessary to address Plaintiff's specific objections. By way of summary, the ALJ determined that Plaintiff had the severe impairments of bipolar disorder with schizoaffective features, borderline personality disorder with histrionic features, hypertension, lumbar degenerative disc disease, nicotine addiction and abuse, and probable branch retinal artery occlusion of the left eye (R. 13, Finding 4), and the record supports this uncontested finding. In addition to the medical records of Plaintiff's treating providers, the record also includes notes or opinions from examining and non-examining state agency practitioners. Non-medical evidence includes Plaintiff's testimony at the hearing, and the testimony of a Vocational Expert.

After detailing the medical and testimonial evidence of record, the ALJ found that Plaintiff had the impairments of bipolar disorder, with schizoaffective features; nicotine addiction; probable branch retinal artery occlusion, left eye; hypertension; degenerative disc disease, lumbar; nicotine abuse; borderline personality disorder with histrionic features; and hypertension, all of which were severe impairments, but not severe enough either singly or in combination to meet an impairment in the Listings (R. 13). The ALJ found Plaintiff's mental impairments resulted in no more than mild restriction of activities of daily living or difficulties in social functioning, with moderate difficulties with concentration, persistence, and pace (R. 13-14). The ALJ found no evidence of decompensation

---

[1] Plaintiff claims she stopped working in December 1983 to stay home with her children (R. 127). She claims disability benefits as the widow of a deceased worker, her first ex-husband (Doc. No. 21, footnote 1).

-2-

episodes of extended duration, and no evidence of "C" criteria factors of the Listings (R. 13-14, *see also* Psychiatric Review Technique (R. 290-303)). The ALJ found Plaintiff had the residual functional capacity ("RFC") to perform a range of light work activity (R. 14-18), and could perform simple routine repetitive tasks that are low demand, low stress and involved occasional contact with the public (R. 15). Relying on vocational expert ("VE") testimony and looking to Medical-Vocational Guideline (Grids) rule 202.10 as a framework for decision-making, the ALJ found Plaintiff had the capacity to perform jobs that existed in significant numbers in the economy (R. 18-19), and was therefore not disabled.

### *STANDARD OF REVIEW*

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – *i.e.,* the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord, Lowery v. Sullivan*, 979 F.2d

835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

## *ISSUES AND ANALYSIS*

Plaintiff raises numerous issues in her papers: 1) whether the ALJ violated her right to due process; 2) whether the determination as to credibility was based on substantial evidence; 3) whether the ALJ properly evaluated the opinions of treating doctors; and 4) whether the ALJ erred in giving significant weight to the opinions of non-examining consultants. After careful review, the Court affirms the administrative decision.

*Due Process*

In his determination, the ALJ referred to public government records pertaining to Plaintiff, but did not include in the administrative record the actual public records referenced (R. 12-13, 15). Plaintiff claims this is a violation of her right to procedural due process. On the unique set of circumstances presented here, the Court finds no such violation.

In his determination, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date, but noted:

> However, the undersigned finds that the claimant continues to maintain an active Hairdresser/Cosmetician license #034968 in the State of Connecticut. The claimant has held this license, which currently bust [sic] be renewed biennially, since November 19, 1983 and is current through April 30, 2010.
>
> The undersigned notes that renewals and maintenance of a current cosmetology license is inconsistent with the claimant's hearing testimony that she is unable to work as a cosmetologist since she graduated from school in the 1980's. While the claimant has reported working as a cosmetologist in the 1980's to her doctor's [sic] (Ex. 14F/17), she testified that she never worked in the field after school.
>
> On October 3, 2005, the claimant reported to Dr. Qadir, that her live in business partner had messed up her business and that she was probably going to lose a lot of money (Ex. 1E/4, 2F/1, 14F/17). The claimant later revealed that the source of the lost money was insurance proceeds from the death of her former husband (Ex. 1E/2, 2F/3). Interestingly, the claimant's earnings record reveals no reports of self employment

>    income that would be expected based upon claimant's business ventures and reported history of cosmetology work.
>
>    The undersigned believes that the claimant <u>was engaged in business</u> and that either she did not make any money, or she just failed to report it to the IRS.
>    Accordingly, the undersigned finds that this reflects negatively upon the claimant's credibility as a whole.

(emphasis in original) (R. 12-13).[2]

Plaintiff contends that the ALJ's reliance on these public records (the cosmetology license and the corporate records) violates her right to due process as codified in the regulations, citing 20 C.F.R. § 404.916(b)(3) and 416.1416(b)(3) ("You or your representative may review the evidence in your case file, either on the date of your hearing or at an earlier time at your request, and present additional evidence"); 20 C.F.R. § 405.360 ("All evidence upon which the administrative law judge relies for the decision must be contained in the record, either directly or by appropriate reference"); and 20 C.F.R. § 416.1453 ("The administrative law judge must base the decision on the preponderance of the evidence offered at the hearing or otherwise included in the record."). While the Court agrees with Plaintiff that, in general, an ALJ cannot rely on new information not in the record without giving Plaintiff an opportunity to review and rebut it,[3] here the information, the substance of which is not contested by Plaintiff, is no more than cumulative.

As noted by the ALJ, Plaintiff told her doctor that she was involved in a record company with her business partner (R. 14, 283) and that she "was a cosmetologist in the 80's" (R. 283).[4] She also

---

[2]Later in the decision, the ALJ noted that "[p]ublic records reveal that the claimant was the director of a Florida corporation, 'Flame Records, Inc.' that was formed in 2002 with Robert Futerman (Ex.14F17)." (R. 15).

[3]*See Cowart v. Schweiker*, 662 F.2d 731, 737 (11th Cir. 1981); and *Demenech v. Secretary of the Dept. of Health and Human Servs.*, 913 F. 2d 882 (11th Cir. 1990) (noting that "where the ALJ substantially relies upon a post-hearing medical report that directly contradicts the medical evidence that supports the claimant's contentions, cross-examination is of extraordinary utility.").

[4]Notably, Plaintiff testified at hearing that she never worked as a cosmetologist (R. 46).

-5-

told her doctor that "her business partner has messed up her business" (R. 122) and, on another occasion, noted that "her business is not doing well" (R. 199). Thus, the public records merely confirm the statements to her doctors which were already in the administrative record. While it would have been preferable to allow Plaintiff an opportunity to address these records prior to the administrative decision, Plaintiff had the opportunity to (and, in fact, did) address the cited records in her argument to the Appeals Council (R. 184-85 – noting "many people maintain professional licences that they do not use for health or other reasons" and addressing her "live-in business partner."). Plaintiff makes no specific argument as to what she would have offered had she been allowed to further rebut these records. Under these circumstances, as the government records were not inconsistent with similar admissions already in the medical record and Plaintiff does not contend that the public record is inaccurate, any error is harmless. *See James v. Barnhart*, 177 Fed. Appx. 875, 877 (11th Cir. 2006) (holding because the ALJ did not substantially rely on doctor's post-hearing report to deny claimant benefits, no due process violation occurred in the ALJ's denial of supplemental hearing request); *see also Moore v. Astrue,* 2010 WL 3489769 (N.D. Fla. 2010) (on different facts, noting that cross examination was not required for a full and true disclosure of the facts and thus, no due process error shown).

*Credibility*

Plaintiff next contends that the ALJ improperly evaluated Plaintiff's credibility by misstating her testimony about her truthfulness with her medical providers, her work history, and in general. Where an ALJ decides not to credit a claimant's testimony about pain or limitations, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. *Jones v. Department of Health and Human Services*, 941 F.2d 1529, 1532 (11th Cir. 1991) (articulated reasons must be based on substantial evidence). A reviewing court will not

disturb a clearly articulated credibility finding with substantial supporting evidence in the record. Applied here, the Court finds no error.

The ALJ found Plaintiff's statements concerning the intensity, persistence and limiting effects of her symptoms were not credible at all (R. 16). As set forth in detail in the administrative decision, this determination was based on various significant inconsistencies and admissions, including Plaintiff's admission to Dr. Qadir, a treating provider, that she had faked having cancer and faked remission (R. 16, 32, 40-42), her testimony that Dr. Qadir "was the only one that I could feel comfortable to be honest with" (R. 32) (which the ALJ interpreted as an admission that she had not been honest with her other doctors); and her testimony that she had not worked after 1983, while earnings records show earnings after that (R. 105-118), and treatment notes show various comments to her providers about "her business" (R. 16, 30).[5] Substantial evidence supports the credibility finding.

Plaintiff told her psychiatrist that she faked having cancer "and her husband at that time was financially able to help her." (R. 199). Plaintiff contends that the ALJ erroneously concluded that Plaintiff lied about having cancer in order to get money from her ex-husband, when the truth is she lied because "she just wanted to be loved" (R. 42). The Court sees no meaningful difference. Plaintiff lied about having a serious illness in order to get something, whether it was money or attention is of no moment.[6] Such conduct has obvious implications with respect to evaluating the credibility of subjective allegations of disability.

---

[5]Plaintiff also testified that she was capable of working during the period of time she was collecting Supplemental Security Income for an alleged disability (R. 15, 31, 47). There are several more inconsistencies, including Plaintiff's description of a live in male she has described as a "fiancé," in treatment records (R. 425), a "best friend" but *not* a fiancé in testimony (R. 26), and a "husband" in other treatment notes (R. 364).

[6]The treatment notes also state: "She states she faked that she had cancer and she was told to go to Venison & get treatment. She stayed there, still lying to her husband and her children. . . She has just told her children that she is in remission . . ." (R. 199).

Plaintiff next contends that her testimony that Dr. Qadir was the "only one that I could feel comfortable to be honest with" cannot be fairly construed as a statement that she was not honest with her other doctors. If Dr. Qadir was the "only" one Plaintiff was comfortable being honest with, what else could this statement possibly mean but that she was not comfortable being honest with her other providers? The record supports a construction that gives these words their plain meaning.

Finally, the record supports the ALJ's findings with respect to Plaintiff's work in 1985 and 86, as well as her statements to her doctors about her "business." (R. 108, 122, 283, 199).[7] The credibility finding is supported by substantial evidence and is therefore affirmed.

*Treating Physicians*

Substantial weight must be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise. *See Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997); *Edwards v. Sullivan*, 937 F.2d 580, 583 (11th Cir. 1991); 20 C.F.R. § 404.1527(d). If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. § 404.1527(d)(2). The ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence or is wholly conclusory. *See Edwards*, 937 F.2d 580 (ALJ properly discounted treating physician's report where the physician was unsure of the accuracy of his findings and statements.)

Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. *See Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986); *see also*

---

[7]Plaintiff speculates that these were short term jobs that she may have forgotten about, and thus, not "lies under oath." In view of the record as a whole including Plaintiff's history of lying and the admissions regarding her business, the ALJ's inference is appropriate.

*Schnorr v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987). When a treating physician's opinion does not warrant *controlling* weight, the ALJ must nevertheless weigh the medical opinion based on the 1) length of the treatment relationship and the frequency of examination; 2) the nature and extent of the treatment relationship; 3) the medical evidence supporting the opinion; 4) consistency with the record as a whole; 5) specialization in the medical issues at issue; 6) other factors which tend to support or contradict the opinion. 20 C.F.R. § 404.1527(d). However, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion. *See Wilson v. Heckler*, 734 F.2d 513, 518 (11th Cir. 1984); *see also* 20 C.F.R. § 404.1527(d)(2).

Here, Plaintiff objects that the ALJ improperly discounted the opinions of Dr. Winters (psychiatrist) and Dr. Kohen (rheumatologist). Upon close review, the Court finds the ALJ's determination as to the weight given these opinions is supported by substantial evidence and was made in accordance with proper legal standards.

With respect to Dr. Winters, Plaintiff first presented on April 17, 2006, because "my doctor wants me to see therapist or no more medications" (R. 281-85). Under general problems and medical/psychiatric history, Plaintiff reported multiple problems with mood, memory, concentration and social interaction. Dr. Winters' initial diagnoses were bipolar disorder II, generalized anxiety disorder, PTSD, and borderline personality disorder/histrionic personality (R. 285). Dr. Winters gave Plaintiff a current global assessment of functioning of 50, which indicates serious impairment of occupational or social functioning (R. 285).

Treatment notes from Dr. Winters' office reflect Plaintiff appeared for counseling and treatment over a period of many months, and reported racing thoughts, anxiety, a feeling of being unloved, and similar issues with family and finances (R. 271-79). She also reported hallucinations. By August 31, 2006, "overall some improvement" was noted (R. 271). As reflected in the treatment notes, Plaintiff's self-reports of her condition waxed and waned. In January 2007, she reported that

she was running out of her medication so she "cut them in half" and experienced a hallucination (R. 267). Later reports show relatively normal objective findings, with Plaintiff noted as coping and tolerating (R. 402, 399-404). Even when Plaintiff reported the death of her fiancé, she was noted to be "coherent and reality based" and did not appear to be hallucinating or responding to internal stimuli (R. 425).

Dr. Winters completed a Mental Residual Functional Capacity Assessment on November 11, 2007 (R. 352-55) and assessed Plaintiff with marked limitations in the following areas: the ability to remember locations and work-like procedures; the ability to understand and remember detailed instructions; the ability to carry out detailed instructions; the ability to maintain attention and concentration for extended periods; the ability to work in coordination with or proximity to others without being distracted by them; the ability to make simple work-related decisions; the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods;  the ability to respond appropriately to changes in work setting; the ability to travel in unfamiliar places or use public transportation; and the ability to set realistic goals or make plans independently of others. In his decision, the ALJ discounted this opinion, noting that Plaintiff's admission that she was only comfortable being honest with Dr. Qadir meant that her reports to Dr. Winters and his subsequent opinions "are not based upon truthful encounters" (R. 15). The ALJ elaborated, finding Plaintiff's reports of audio and visual hallucinations were not based on objective evidence and, "due to their subjective nature and the claimant's admission that she lies to her psychiatrists," the reports were discounted (R. 17). Moreover, the ALJ determined that the opinion was inconsistent with the record as a whole (R. 15). The ALJ noted that Dr. Winters' own reports reveal that the mental status of the claimant and the associated *objective* findings remained within normal limits (R. 17, 267-85, 396-404). The ALJ found Plaintiff "was not honest with Dr. Winters,"

noting as an example that she never told him she was involved in a business, and concluded that therefore his opinions were not based on medical evidence and "cannot be given any weight beyond that of objective observations and to reveal inconsistencies within the claimant's various reports" (R. 17). The ALJ also noted that although Plaintiff had some mental problems that caused some limitations, Dr. Winters never provided an Axis V assessment of her limitations throughout his treatment of her (R. 17). Thus, the ALJ gave less weight to Dr. Winters opinion, which was based primarily on Plaintiff's subjective reports that were found to be not credible (R. 17).

Plaintiff contends that he ALJ erred as a matter of law in rejecting the opinion of Dr. Winters because the ALJ's stated reasons for rejecting the opinion are not supported by substantial evidence. The Court finds no reversible error.

To the extent the ALJ rejected Dr. Winters' opinion as being based on subjective evidence which was not credible, substantial evidence supports this conclusion. As discussed above, Plaintiff's demonstrated lack of veracity makes subjective allegations suspect. Moreover, while Plaintiff is correct in noting that Dr. Winters did not always find normal objective findings, there is substantial support for the ALJ's conclusion that this opinion was inconsistent with the record as a whole. Plaintiff was alert and oriented in mental status examination with Dr. Qadir, with no evidence of psychosis (R. 200). She presented with normal mental status exams to her family physician (R. 383, 387, 389 -"in good mood, oriented x3, no memory impairment"), the emergency room evaluated her with no anxiety, no depression, no suicidal ideation (R. 359) when she presented for elevated blood pressure, and Dr. Winters' notes do contain numerous normal objective findings. Importantly, there is no evidence of hospitalizations or other episodes of decompensation which would be expected in someone as limited as Dr. Winters' opined Plaintiff to be. While Plaintiff correctly notes that Dr. Winters did, in fact, provide an Axis V assessment of her limitations, the one time GAF assessment

of 50 reflected only a then-current limitation, prior to the institution of new medications. The treatment notes reflect less significant objective findings as Plaintiff improved.

As noted by another court facing the same issue:

It is well-settled that an ALJ may disregard a medical opinion premised on the claimant's self-reported symptoms if the ALJ has reason to doubt the claimant's credibility. *See, e.g., Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir.1995) (ALJ could reject portion of physician's report based upon plaintiff's own statements of functional restrictions where ALJ found plaintiff's subjective statements not credible); *Mastro v. Apfel*, 270 F.3d 171, 177-78 (4th Cir.2001) (affirming ALJ's disregard of treating physician's opinion because it "was based largely upon the claimant's self-reported symptoms" and was not supported by the objective medical evidence); *Morgan v. Commissioner of the Social Security Administration*, 169 F.3d 595, 602 (9th Cir.1999) (physician's opinion of disability premised to large extent on claimant's own accounts of symptoms and limitations may be disregarded where those complaints have been properly discounted).

*Vreeland v. Astrue*, 2007 WL 5414923, 9 (W.D. Wis. 2007) (upholding the ALJ's decision to reject opinions of claimant's doctors regarding the severity of her severe mental impairments where rejection was based in part on the ground that they were founded on claimant's subjective reports, which the ALJ determined where not credible). While the Court agrees with Plaintiff that the treatment notes could also be viewed to support a finding of disabling mental illness, it is not the task of the Court to reweigh the evidence and reach its own independent conclusions. Rather, in applying the deferential standard of review, the Court finds that the decision of the ALJ to discount the opinion of Dr. Winter is adequately explained, consistent with proper standards of law, and based on more than a scintilla of evidence, and therefore must be affirmed.[8]

As for Dr. Kohen, according to the record, Plaintiff saw Dr. Kohen, a rheumatologist, for one visit on November 15, 2006 (R. 249-50). At that time, Dr. Kohen noted, among other things, that

---

[8] The Court acknowledges the difficulty in evaluating opinions of medical providers when they are based on subjective complaints of a claimant known to have lied about her health. However, where, as here, a negative credibility determination is amply supported and little objective evidence of the severity of the condition is established, "the ALJ was entitled to discount medical evidence based on noted contradictions and the reasonable conclusion that [claimant] lied and exaggerated to various doctors. . . thus fatally tainting their disability-supportive opinions." *Beck v. Astrue*, 2009 WL 1704352, 5 (S.D.Ga. 2009).

Plaintiff had a limp, reported being "tender all over" and presented with decreased motion in the spine and decreased strength (R. 249). Plaintiff was diagnosed with fibromyalgia, inflammatory polyarthralgias, lumbar spondylosis with scoliosis and a right leg radiculopathy, and osteopenia (R. 250). No limitations or restrictions of any kind were noted or imposed. On April 13, 2007, Dr. Kohen signed a form[9] which limited Plaintiff to less than sedentary work (R. 304-06). The ALJ rejected the opinion of Dr. Kohen because he saw the Plaintiff only one time and "could point to no medical or clinical findings upon which the opinion is based and could only point to subjective reports upon which to base his opinion." (R. 18.) Plaintiff contends that this is error in that these reasons are not supported by substantial evidence.

As noted, Dr. Kohen is not a treating provider as he saw Plaintiff only once. While Plaintiff correctly notes that Dr. Kohen reviewed an MRI, there is no correlation made between the MRI (the results of which are not discussed in Dr. Kohen's notes), the diagnosis of fibromyalgia, and resulting opinion that Plaintiff was limited due to pain (a subjective symptom) from fibromyalgia (R. 306). Indeed, Dr. Kohen did not provide any answer for Question five on the form, which asks for the medical/clinical findings which support the exertional limitations (R. 305). The ALJ's determination regarding the evaluation of Dr. Kohen's opinion is adequately supported.

*Non-examining Consultants*

Plaintiff next contends that the ALJ erred in giving substantial weight to the opinions of non-examining consultants as: "A non-examining consulting doctor's 'opinion is entitled to little weight and taken alone does not constitute substantial evidence to support an administrative decision.'" *Swindle v. Sullivan*, 914 F.2d 222, 226 n.3 (11th Cir. 1990). As Plaintiff herself acknowledges, the ALJ gave some weight to the opinions of treating physicians Dr. Qadir and Dr. Solomon (R. 17-18)

---

[9]It is evident that the form contains the handwriting of two different people (R. 304 -06).

(Brief at 23), and discussed at length the objective medical evidence of record, in addition to crediting consultants opinions as consistent with that evidence. The consultants opinions were not "taken alone" but were considered along with significant other evidence of record in formulating Plaintiff's residual functional capacity.  No error is shown.

A final note is in order.  The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. § § 416(I), 423(d)(1); 20 C.F.R. § 404.1505.  The impairment must be severe, making the claimant unable to do her previous work, or any other substantial gainful activity which exists in the national economy.  42 U.S.C. § 423(d)(2); 20 C.F.R. § § 404.1505-404.1511. While it is clear that Plaintiff has challenges and difficulties, the only issue before the Court is whether the decision by the Commissioner that Plaintiff did not meet this standard is adequately supported by the evidence and was made in accordance with proper legal standards.  As the Court finds that to be the case, it must affirm the decision.

## CONCLUSION

The decision of the Commissioner was supported by substantial evidence and was made in accordance with proper legal standards.  As such, it is **AFFIRMED.**  The Clerk is directed to enter judgment accordingly and close the file.

**DONE** and **ORDERED** in Orlando, Florida on December , 2010.

*David A. Baker*
DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record